UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| RYAN RUDDELL, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) Case No: 3:15-cv-1253-NJR-DGW ) |
| MARATHON PETROLEUM CO., LP, MARINE TRANSPORTATION, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE THE REPORT AND BAR THE TESTIMONY OF DEFENDANTS' EXPERT LIABILITY WITNESS KEVIN MULLEN

Numerous cases have excluded so-called expert marine testimony on the basis that such testimony is unnecessary for the jury to adequately assess liability. In *Peters v Five Star Marine Service*, 898 F.2d 448 (5th Cir. 1990), the plaintiff slipped and fell while offloading machinery from a supply boat in rough seas. The Fifth Circuit affirmed the trial court's decision to exclude the testimony of a marine operations expert as it was unnecessary for the jury to adequately assess liability. Finding that the proffered expert testimony would not assist the trier of fact, the Fifth Circuit observed:

> "[The] jury was asked to decide whether it was reasonable for an employer to instruct his employees to manually move equipment on the deck of a boat during heavy seas. Additionally, the jury was to assess the possibilities that the cargo had been improperly stowed, i.e., was rolling around on the deck instead of being wrapped down, and that spilled diesel fuel had made the deck of the ship slippery. <u>The trial judge correctly decided that the jury could adeptly assess this situation using only their common experience and knowledge. Expert testimony was unnecessary,</u>

> and thus the decision to exclude the testimony was within the discretion of the trial judge."

Id. at 450, emphasis added.

Similarly, in *Pope v Chevron U.S.A., Inc.*, 1994 W.L. 179938 (E.D. La. 1994), the court excluded the proffered testimony from two experts retained by the plaintiff on the grounds that said testimony would not assist the jury, since the facts and circumstances surrounding plaintiff's accident were something the jurors could assess based on their common sense, experience and knowledge. The plaintiff in *Pope* was injured while he was being transferred off of the defendant's vessel to a platform via personnel basket attached to a crane. One of the plaintiff's proposed experts opined that personnel transfers in seas of 10 to 12 feet would be reckless and hazardous. Another expert opined that a transfer via personnel basket from the vessel in seas of 10 to 12 feet with winds at 28 to 31 knots would be extremely hazardous and should not have been allowed or ordered. After citing to *Peters, supra*, the trial court found that the jury could competently deal with the facts and issues involved in the case (i.e., rough seas and high winds) based upon their own common sense, experience and knowledge without the need for the so-called "expert" testimony being offered by the plaintiff. Id. at *2. The court noted:

> "Just as expert testimony was unnecessary for the Peters jury to decide whether it was reasonable for the plaintiff to offload equipment during rough seas, expert testimony is unnecessary here for the jury to decide whether it was reasonable to transfer plaintiff in a personnel basket from the vessel to a fixed platform in rough seas. Id. at *3."

*Johnson v Pool Company of Texas*, 1994 W.L. 643113 (E.D. La. 1994), also involved a plaintiff who was injured while being transferred from an offshore platform onto a crew boat via personnel basket attached to a crane. The defendant moved to exclude the plaintiff's expert arguing that this was a "simple case which turns on the interpretation of factual evidence and is not the type of case in which the jury would be aided by the use of 'liability experts'." Id. at *1.

2

The court agreed noting that the "linchpin for determining the admissibility of expert testimony is whether it will assist the finder of fact" and that "the jury on this case can reasonably understand and evaluate the relatively simple mechanics of a personnel basket." Id. at *1-2.

The court in *Carter v Great American Insurance*, 1994 W.L. 374283 (E.D. La. 1994), reached a similar conclusion. In that case, the court noted that the report of the proffered marine safety expert "merely recites basic factual issues and then attempts to apply the factual issues to an expert's standard." The court found such a practice unhelpful to the jury's determination of the issues involved in the case, holding as follows:

> "This Court has consistently refused to permit 'safety expert' testimony except in the most unusual situation. This case does not fall into that category and the Court is in full agreement with the position taken by defendants in their memorandum. The Court has read Mr. Gallardo's April 25, 1994 letter report. It is obviously not scientific nor does it impress the Court as being one of technical or specialized knowledge which would assist the fact finder as Rule 702 requires. It falls clearly within the ambit of Rule 403. The matters at issue are within the common knowledge of jurors."

Similarly, the court in *Bouton v Kim Susan, Inc.*, 1997 W.L. 61450 (E.D. La. 1997), struck a liability expert in what was essentially a slip-and-fall case. The court cited with approval the opinion in *Williams v Eckstein Marine Services, Inc.*, 1992 W.L. 373613 at *1 (E.D. La. 1992), wherein the "common trend" of attempts to introduce unhelpful expert testimony was characterized as follows:

> "The testimony of an 'expert' is tendered, who is an individual who happens to have some title, normally describes himself as a 'consultant.' A review of their 'expert' reports normally reveals that the reports consist of their appreciation of the facts (some of which are usually in dispute), their conclusion as to what the law is or ought to be, as far as fixing responsibility for the accident, and for sure, a reservation at the end of the report to change their opinion if they learn more information."

*Bouton at *2* (citing *Williams*, 1992 W.L. 373616 at *1).

3

On pages 5 and 6 of his so-called report, Mr. Mullen identifies a "Summary of Opinions" or its plaintiff will heretofore set out *seriatim* for the court and object.

- MPC is well-known in the marine industry as a company that complies with proper standards of marine safety practices, vessel operation, crew member supervision and crew member training, and places extraordinary emphasis on crew member safety and training.

Objection: Hardly the stuff of expert opinion, this "opinion" is a general observational overbroad personal commentary not based on personal knowledge meant to improperly influence the jury.

- Being a deckhand and working out on the tow as a member of a deck crew is a physically demanding occupation, and often involves working outside in the elements, sometimes in adverse weather conditions.

Objection: This "opinion" is the stuff of common knowledge and observation, not the topic of expert opinions.

- The M/V Nashville was fit for its intended use and purpose of the day of the alleged incident (August 27, 2014), and MPC provided the Nashville's deck crew with a safe place to work. Any claim or opinion that the Nashville was "unseaworthy" at the time of the incident alleged, or any other time on August 27, 2014 is without merit.

Objection: This ultimate conclusion is for the jury to make, not Mr. Mullen.

- Assistance from other MPC crew members or from SCF Lewis & Clark crew members would not have prevented or been helpful in preventing any incident or claimed injury to Mr. Ruddell. If Mr. Ruddell sustained any injury on the evening of August 27, 2014, it was an inevitable incident that could have been avoided if Mr. Ruddell had lifted and bent

4

properly. There was nothing more than MPC could have been to prevent it or lessen the likelihood of occurrence.

Objection: Mr. Mullen has no medical or ergonomic training that would enable him to opine on whether assistance from other crew members would have prevented injury, or that Mr. Ruddell's injury was inevitable, or could have been avoided if he lifted and bent differently. Irrespective, he is opining on matters of common knowledge.

> Weather conditions were not severe enough at the time of the incident to justify stopping or halting work on the tow. The Captain used proper and appropriate data and information to make an informed decision to perform the work as anticipated with the existing and changing weather conditions. If Mr. Ruddell or any other MPC crew member believed that weather conditions were too severe to work out on the tow on the evening of August 27, 2014, they had the ability to request that work be stopped. Neither Mr. Ruddell nor any other crew member made such a request.

Objection: Mr. Mullen states that the weather conditions were not severe enough to stop or halt the work but he never identifies what the weather conditions were. He opines that the captain used proper and appropriate data to make an informed decision, but does not recite what data there was. As to whether Mr. Ruddell had the ability to request that work could be stopped, that is not a topic of expert opinion, nor is whether or not he made such a request.

> The crew working on the tow at the time of the incident was adequate for the tasks being performed, and all tasks performed by Mr. Ruddell on the evening watch of the day of the incident, including operating the winch and handling a single wire, are typically and customarily performed without assistance from other crew members.

Objection: There is no claim in this case that the crew was inadequate. That is a matter of common knowledge, anyway.

- Mr. Ruddell used improper bending technique while handling wire on the day of the incident, by bending at the waist and with his back. The ergonomically proper lifting technique, which Mr. Ruddell had been trained and instructed to use, is to lift with the legs. There also appears to be no evidence to support Mr. Ruddell's claim that he had to use altered ergonomics, bending, or lifting technique on the day of the incident due to weather.

Objection: This "opinion" is a matter of common knowledge; moreover, the witness has no medical or ergonomic training to authoritatively speak to the topic.

- The wire handled by Mr. Ruddell on the day of the incident, and all wired handled by the MPC crew of the day of the incident were in fine working condition and not in need of replacing. Furthermore, it is custom and practice for crews to routinely monitor wires on the tow for wear and to replace them as needed. It appears that the MPC crew did this and there is no indication that there were any wires in use that needed replacing.

Objection: Here we have another common knowledge opinion being offered by the expert.

O'BRYAN BAUN KARAMAMIAN

/s/ Dennis M. O'Bryan

Dennis M. O'Bryan
Attorney for Plaintiff
401 S. Old Woodward, Ste. 463
Birmingham, MI 48009
(248) 258-6262
(248) 258-6047 – fax
dob@obryanlaw.net

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on the 7th day of March 2017, the foregoing was filed using the Court's ECF filing system and was served upon the following counsel of record:

6

Raymond L. Massey, Esq.
Daniel L. Massey, Esq.
The Massey Law Firm, LLC
Two City Place Drive, Ste. 200
St. Louis, MO 63141
314-812-4888 - Office
314-602-6075 – Cell
ray@themasseylawfirm.com
dan@themasseylawfirm.com

_Jaima M. Karam_