IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RYAN RUDDELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-CV-1253-NJR-DGW |
| | ) |
| MARATHON PETROLEUM COMPANY LP, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Ryan Ruddell filed this lawsuit pursuant to the Jones Act, 46 U.S.C. § 30104, alleging he sustained injuries on August 27, 2014, while employed by Defendant Marathon Petroleum Company LP ("MPC") as a crew member aboard its vessel, the M/V Nashville (Doc. 1). Ruddell claims that inclement weather, including storm and lightning conditions, contributed to his injuries (*Id.*).

The matter is now before the Court on the motions to strike the reports and bar the testimony of Ruddell's experts Robert B. Ancell, Ph.D., and Howard Altschule, filed by MPC (Docs. 35, 36). Ruddell also has filed a motion to strike the report and bar the testimony of Defendant's liability expert Kevin Mullen (Doc. 43).

**I.   MPC's Motion to Strike the Report and Bar the Testimony of Ruddell's Expert Robert B. Ancell, Ph.D.**

The Court first addresses the motion to strike the report and bar the testimony of Ruddell's purported rebuttal expert, Robert B. Ancell, Ph.D. The scheduling order entered in this case, as amended by Magistrate Judge Donald G. Wilkerson on July 28,

2016, required Ruddell to disclose expert witnesses (other than those performing any physical examination pursuant to Rule 35) and produce a written Rule 26 expert report on or before October 15, 2016 (Doc. 25). MPC was to disclose its experts and produce written reports on or before December 16, 2016[1] (*Id.*). There was no provision in the scheduling order for the disclosure of rebuttal experts (*Id.*). Depositions of Plaintiff's experts were to be taken by December 16, 2016 (later extended by agreement of the parties to January 13, 2017), and discovery was to close on January 31, 2017 (*Id.*; Doc. 35, p. 1).

On January 13, 2017, MPC served the report of its vocational expert, Scott Gould. On January 31, 2017, the period for discovery closed. Then, on February 7, 2017, Ruddell served MPC with an unsigned letter described by Ruddell as a reply to the expert report of MPC's retained vocational expert. The letter was prepared by Robert B. Ancell, Ph.D. ("Ancell Report") (Doc. 35-1). Six days later, on February 13, 2017, Ruddell served MPC with additional materials, including a list of the trials in which Dr. Ancell has testified, his compensation and fees, and his resume (Doc. 35-2).

MPC argues that the Ancell Report is untimely and should be stricken. MPC notes that while the report would be timely under Rule 26(a)(2)(D), which allows for disclosure of rebuttal experts within 30 days after the other party's disclosure, that rule only applies when there is no scheduling order in place requiring earlier disclosure. Furthermore, disclosure of a rebuttal expert made after the scheduling order's discovery deadline is untimely and subject to a motion to strike. Ruddell denies that the rebuttal

---

[1] It appears this deadline was extended by agreement of the parties, as Defendant asserts that it timely served its vocational expert's report on January 13, 2017. Ruddell does not dispute the timeliness of the report; therefore, the Court finds it was timely served.

expert disclosure deadline in Rule 26(a)(2)(D) only applies when there is no scheduling order in place requiring earlier disclosure and argues that the Ancell Report was timely.

Pursuant to Rule 26(a)(2), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence and must make these disclosures at the times and in the sequence that the court orders. FED. R. CIV. P. 26(a)(2)(D). Rule 26(a)(2)(B) requires expert witness disclosures to include, *inter alia*, a complete statement of all opinions the witness will express and the basis and reasons for them. FED. R. CIV. P. 26(a)(2)(D). Rule 26(a)(2)(D) also requires that, absent a court order, disclosure must be made "(i) at least 90 days before the date set for trial or for the case to be ready for trial or (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure." FED. R. CIV. P. 26(a)(2)(D) (emphasis added).

Where the Court's scheduling order is silent on the matter of rebuttal experts, rebuttal expert reports are due within 30 days of the other party's expert disclosures. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996) ("The federal civil rules . . . require disclosure to one's opponent of expert testimony intended for use as rebuttal evidence within 30 days of the opponent's disclosure of his expert testimony, unless the district court otherwise directs or the parties otherwise stipulate."); *see also Frerck v. Pearson Educ., Inc.*, No. 11 C 5319, 2014 WL 477419, at *2 (N.D. Ill. Feb. 6, 2014); *Custom Foam Works, Inc. v. Hydrotech Sys., Ltd.*, No. 09-CV-0710-MJR, 2011 WL 2161106, at *1 (S.D. Ill. June 1, 2011).

Here, the Ancell Report was served on February 7, 2017, which was 25 days after MPC served its vocational expert's report. Thus, the rebuttal report was timely under Rule 26(a)(2)(D)(ii). MPC argues, however, that even if timely under Rule 26(a)(2)(D)(ii) applies, the Ancell Report was served after the close of discovery on January 31, 2017, and, thus, is still late and must be stricken.

Under Rule 37(c)(1), a party that fails to identify a witness as required by Rule 26(a) or 26(e) is not allowed to use that witness to supply evidence at a trial "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The determination of whether a late expert witness disclosure should be allowed is entrusted to the district court. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). The Seventh Circuit has set forth four factors to guide the district court's analysis: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Id.*

MPC argues that it would be unfairly prejudiced if Dr. Ancell is permitted to testify, because discovery has closed and it would be unable to take Dr. Ancell's deposition. MPC also contends that Ruddell knew MPC intended to deny his claim for future loss of earnings, loss of earning capacity, or significant vocational impairment, and Ruddell should have retained and disclosed a vocational expert as part of his case-in-chief.

In response, Ruddell argues that the failure to serve the rebuttal report before the close of discovery was substantially justified because he was duped by MPC into

believing that its vocational expert's involvement in the case was an attempt to get him back to work, not to evaluate him, as a testifying expert. Ruddell presents a number of emails, the earliest dated September 20, 2016, where counsel for MPC informs counsel for Ruddell that MPC arranged for him to be evaluated concerning his ability "to get back to work as soon as he can," and that MPC was willing to pay for Ruddell's vocational services so that he can re-enter the workforce. Counsel for MPC also asks at least twice in the emails whether Ruddell has met with "the vocational person" yet. It was not until January 13, 2017, that MPC disclosed that its "vocational person" was actually a vocational expert whose report MPC intended to use at trial. Ruddell asserts that these emails evidence his good cause for submitting the late report.

Even if Ruddell was legitimately surprised by MPC's use of its vocational "person" as a testifying expert witness, he has failed to state any reason substantially justifying why he disregarded the discovery deadline in serving the late rebuttal report. Ruddell had 18 days between service of the expert report and the discovery cutoff to provide the rebuttal report, request an extension of the discovery period, or otherwise alert the Court to the issue. Ruddell did not do so, and now discovery has closed. The Seventh Circuit has made clear that "deadlines have meaning and consequences." *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996) ("If the court allows litigants to continually ignore deadlines and seek neverending extensions without consequence, soon the court's scheduling orders would become meaningless."); *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1024 (7th Cir. 1991) (discussing barring the use of expert testimony and stating that "[j]udges must be able to enforce deadlines."). Because Ruddell did not

serve the rebuttal report of Dr. Ancell prior to the close of discovery (or even attempt to ask the Court for an extension of the discovery period), the untimely report must be stricken. Ruddell is barred from presenting the testimony of Dr. Ancell at trial.

**II.     MPC's Motion to Strike the Report and Bar the Testimony of Ruddell's Expert Witness Howard Altschule**

MPC also has moved to strike the report and bar the testimony of Howard Altschule, an expert disclosed by Ruddell to offer opinions concerning the weather in and around Wood River, Illinois, on August 27, 2014 (Doc. 36). MPC claims that Altschule's opinions are unreliable under Rule 702 of the Federal Rules of Evidence, as well as *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), because he relied on data from Madison County, Missouri, instead of Madison County, Illinois. MPC also asserts that the subject of Altschule's testimony (the weather) is not so technical or complex as to require explanation by an expert witness. Finally, MPC takes issue with Altschule's unwillingness to consider sources outside of historical weather data in preparing his analysis and opinions.[2]

In response, Ruddell denies that the weather is not technical or complex enough to require explanation by an expert witness, and he asserts that MPC's remaining arguments go to the weight and credibility of his testimony rather than its admissibility.

Federal Rule of Evidence 702 provides:

---

[2] MPC also argues that the Altschule Report failed to contain Altschule's educational background, professional experience, qualifications to be an expert, rate of compensation, or a listing of cases in which he had testified during the past four years, as required by Federal Rule of Civil Procedure 26(a)(2)(B)(iv). Shortly after MPC filed the instant motion, Ruddell served MPC with Altschule's prior testimony, his compensation requirements, and his form retainer agreement (Doc. 38-1). Ruddell did not, however, provide Defendants with Altschule's resume or CV stating his educational background and professional experience. The Court subsequently ordered Ruddell to produce Altschule's CV (Doc. 61), and Ruddell complied. Because MPC's motion does not demonstrate how it is prejudiced by the late disclosure of this information, the Court declines to strike Altschule's report on this basis.

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, or training or education may testify thereto in the form of an opinion or otherwise.

"In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court held that Rule 702 imposes on the trial court the obligation, when dealing with expert witnesses, to ensure that scientific testimony is 'not only relevant but reliable.'" *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) (quoting *Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 608 (7th Cir. 2000)). "This requires a trial judge to determine whether an expert's opinion was grounded in the methods and procedures of science, and whether the opinion had sufficient factual underpinnings." *Id.*

When faced with expert scientific testimony, a district court must determine whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact in understanding or determining a fact in issue. *Daubert*, 509 U.S. at 592. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. The Supreme Court outlined four factors that district courts should consider when analyzing of expert testimony, including whether or not the theory or technique has been (1) tested; (2) subjected to peer review and publication; (3) analyzed for known or potential error rate; and/or (4) is generally accepted within the specific scientific field. *Daubert*, 509 U.S. at 593–94.

"The Rule 702 inquiry is fact-dependent and flexible." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141

(1999) ("[A] trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability.) *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. *Id.*

> As the Seventh Circuit stated in *Schultz v. Akzo Nobel Paints, LLC*:
>
> . . . the key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion; the inquiry must 'focus . . . solely on principles and methodology, not on the conclusions they generate.'

*Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 595). "So long as the principles and methodology reflect reliable scientific practice, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596). An expert must explain the methodologies and principles that support his or her opinion; he or she cannot simply assert a "bottom line" or *ipse dixit* conclusion. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)). The district court possesses "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007)).

According to his report dated July 12, 2016, Altschule, through his company Forensic Weather Consultants, LLC, was hired by counsel for Ruddell to perform an in-depth weather analysis and forensic weather investigation in the vicinity of Wood

River, Illinois, in order to determine the weather conditions on August 27, 2014 (Doc. 36-2, p. 2). Altschule's resume states that he received a Bachelor of Science degree in Atmospheric Science from State University of New York at Albany in May 1995 and served as an on-air television meteorologist for the NBC affiliate in Albany, New York, from 1997 to 2004. In 1999, Altschule founded his company, Forensic Weather Consultants, through which he has served as an expert in more than 1,600 cases. Altschule received the American Meteorological Society's ("AMS") Seal of Approval in 2001 and was designated a Certified Consulting Meteorologist by the AMS in February 2014. The Certified Consulting Meteorologist designation is issued by the AMS to "highly qualified meteorologists providing research and services to a wide variety of users of weather information" who "demonstrate a broad background in meteorology together with detailed knowledge in a particular field of specialization."

To develop his opinions in this case, Altschule used various sources of weather information and data from the official weather stations closest to the incident area. Specifically, Altschule reviewed official copies of weather records, including the National Weather Service Hourly Surface Weather Observations/Quality Controlled Local Climatological Data from St. Louis Regional Airport in Alton, Illinois; cooperative observer weather station reports from Alton, Illinois; a publication entitled "Storm Data" for Illinois and Missouri in August 2014; Super-resolution Reflectivity Doppler Radar images from the St. Louis, Missouri radar site; various weather bulletins, advisories, and statements (including "zone forecasts") issued by the National Weather Service in St. Louis, Missouri; atmospheric sounding numerical data from Lincoln, Illinois; and a

STRIKEnet Report for August 27, 2014 (Doc. 36-2, pp. 3-4). He then used that data to conclude, among other things, that between 3:57 p.m. and 6:45 p.m. on August 27, 2014, a total of 3,398 cloud-to-ground lightning strikes occurred within 15 miles of the incident area, with the closest strike occurring 0.9 miles away at 5:50 p.m. (Doc. 36-2, p. 8).

MPC first avers that Altschule's opinions are unreliable because he relied on zone forecasts from Madison County, Missouri rather than Madison County, Illinois. In his report, Altschule copied publicly issued "zone forecasts" from the National Weather Service in St. Louis, Missouri, which forecast "scattered showers and thunderstorms in the afternoon" for "Madison MO" on August 27, 2014. Based on these zone forecasts, Altschule concluded that showers and thunderstorms were "well-forecasted in National Weather Service publicly issued zone forecasts for the incident area on August 27, 2014 well before the time of the incident." (Doc. 36-2, p. 8). MPC contends that Altchule's use of data for Madison County, Missouri, affects the reliability of his opinions and analysis and, thus, the report should be stricken.

While Altschule clearly included data from the wrong area in his report, the Court is not convinced the error so infected the remainder of the report that it should be stricken in its entirety. Altschule testified at his deposition that his inclusion of data from Madison County, Missouri, was an error and that he actually reviewed data from Madison County, Illinois, when performing his analysis. He further testified that the forecast for Madison County, Illinois, also showed thunderstorms in the forecast (Doc. 36-1, p. 113). Furthermore, his conclusion based on the zone forecast—that showers and thunderstorms were forecasted in the incident area well before the time of

the incident—has no bearing on his other conclusions regarding the number of lightning strikes that occurred in the area and the radar imagery at the time of the incident. The Court agrees with Ruddell that the error goes toward the weight and credibility of the expert's testimony rather than its admissibility. MPC can cross-examine Altschule regarding the error at trial.

MPC also argues that the subject on which Altschule is expected to testify is not so technical or complex as to require explanation by an expert witness. MPC asserts that there are witnesses who personally observed weather conditions at the incident site that can provide better and less confusing testimony on the issue than Altschule. MPC further contends that Altschule's unwillingness to consider other sources of weather information other than historical data factors in favor of excluding his report and testimony.

Again, the Court disagrees. Altschule testified that meteorologists rely upon official weather records during the normal course of investigations such as this one, and that such records are "very valuable in recreating and understanding what was going on at the time of [the] incident." (Doc. 36-1, p. 10). He also testified that, in his opinion, weather data is more reliable than eyewitness recollection (*Id.*). "Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert,* 509 U.S. at 592. Accordingly, the Court finds that Altschule's testimony regarding the weather conditions at the time of the incident will "assist the trier of fact to understand or determine a fact in issue," as required by Federal Rule of Evidence 702(a). As discussed

above, MPC can challenge the validity of Altschule's conclusions at trial. For these reasons, MPC's motion to strike the report and bar the testimony of Ruddell's expert Howard Altschule is denied.

**III.   Ruddell's Motion to Strike the Report and Bar the Testimony of MPC's Expert Liability Witness Kevin Mullen**

Lastly, the Court addresses Ruddell's motion to strike the report of MPC's liability expert Captain Kevin Mullen. On January 18, 2017, MPC disclosed Captain Mullen as an expert who would offer opinions concerning MPC's liability. Ruddell claims there are "several flaws with the Mullen Report and the testimony he would be expected to offer at trial." (Doc. 43, p. 3). Ruddell further asserts that it is questionable whether Mullen's opinions, analysis or data collection will assist the jury in evaluating weather conditions in the Wood River, Illinois area, as the report's relevance and reliability are in question (*Id.*). Ruddell argues that the report offers nothing but a bottom line and, thus, supplies nothing of value. The motion does not question Captain Mullen's qualifications as an expert.

As an initial matter, the Court notes that Ruddell's motion is untimely. On January 14, 2016, the parties were provided with the Court's Uniform Trial Practice and Procedures (Doc. 13), which states that the undersigned District Judge has a special deadline for *Daubert* motions, i.e., on or before the deadline for dispositive motions. *See* Doc. 13, p. 5 ("Any challenges to the testimony of a potential witness brought pursuant to FED. R. EVID. 702 or FED. R. EVID. 703 (i.e., *Daubert* motions) shall be filed on or before the case's deadline for dispositive motions."). In this case, the dispositive motion deadline was February 15, 2017, a deadline that the parties assured Magistrate Judge

Wilkerson they could meet (*see* Doc. 34). Furthermore, the scheduling order specifically states that dispositive motions filed after this date will not be considered (Doc. 25). As a result, the motion would properly be denied on this basis alone.

Even considering the merits of the motion, the Court finds no basis to strike the report and bar the testimony of Captain Mullen. According to his report, Captain Mullen is the owner of S.C.O.R.E. Maritime Services, LLC, which provides "a broad array of safety and compliance services for the inland towing and passenger vessel industry." (Doc. 43-1, p. 11). He previously served as the manager of safety and compliance at American Commercial Barge Lines, where he developed and implemented vessel safety, regulatory compliance, and training programs. Captain Mullen is also the Executive Director of the Steamer Belle of Louisville, Kentucky, and serves as the Captain and Pilot of the ship during cruising season. Captain Mullen maintains several licenses, including Merchant Mariner – Master/First Class Pilot – Any Gross Tons, Master – Great Lakes – 1600 Tons, and Mates – Great Lakes – Any Gross Tons. His expertise is in safety programs for vessels, including regulatory compliance, safety, risk management, and project management.

In this case, Captain Mullen reviewed transcripts and exhibits from Ruddell's deposition, the depositions of MPC crew members, papers submitted by one of Ruddell's expert witnesses, MPC's safety policies and procedures, barge industry safety policies and procedures, U.S. Coast Guard regulations and The American Waterways Operators Responsible Carrier Program documents, and various discovery requests and responses in this case to reach his conclusions (Doc. 43-1, p. 3, 8). In arriving at his

opinions, Captain Mullen states that he relied upon his years of experience as a Captain of vessels on inland rivers, his experience as a certified safety auditor, and his experience in crew training, vessel safety compliance/management, and maritime safety management and training (*Id.*).

Specifically, Captain Mullen opined that: (1) MPC is well known in the marine industry as a company that complies with proper safety standards, operations, and crew member supervision and training; (2) being a deckhand and working out on the tow is a physically demanding occupation that often involves working outside in the elements, sometimes in adverse weather conditions; (3) the vessel on which Ruddell worked was fit for its intended use and purpose on the day of the incident, it was not "unseaworthy," and MPC provided the crew with a safe place to work; (4) assistance from other crew members would not have prevented or helped to prevent any injury to Ruddell; rather, the injury could have been avoided had Ruddell lifted and bent properly; (5) weather conditions at the time of the incident were not severe enough to justify stopping work on the tow, and the Captain used appropriate weather data to make an informed decision to perform the work. If Ruddell believed the weather conditions were too severe, he could have requested that work be stopped, but he did not do so; (6) the crew working on the tow at the time of the incident was adequate for the tasks being performed, and the work done by Ruddell is typically handled without assistance from other crew members; (7) Ruddell used improper bending technique while handling wire by bending at the waist instead of lifting with his legs as he had been trained and instructed to do; furthermore, there is no evidence the weather affected his ergonomics, bending, or

lifting technique; and (8) the wire handled by Ruddell was in fine working condition and not in need of replacing (*Id.*, p. 7-8).

Despite claiming that the report is flawed, Ruddell does not identify any specific errors within the report. Instead, he offers objections to each of Captain Mullen's conclusions. The Court has reviewed each of Ruddell's objections and finds them meritless.

Ruddell objects to several of the conclusions as being "common knowledge," but the Court agrees with MPC that it is unlikely the jury will have much (if any) knowledge or understanding of the river industry, barge industry custom and practice, tow work, the job functions of deck crews, marine safety, vessel operation, or crew training. Thus, Captain Mullen may discuss his conclusions with regard to the conclusions Ruddell claims are "common knowledge." And while Ruddell claims that Captain Mullen's opinion regarding MPC's reputation in the industry with regard to proper safety standards, operations, and crew member supervision and training is nothing more than "personal commentary," Captain Mullen stated that he has years of experience with numerous barge line companies, he has performed marine audits on vessel operations as a safety compliance officer, and he is familiar with the custom and practice of the inland river business (Doc. 43-1, p. 3). Thus, his opinion regarding MPC's safety compliance will be allowed.

Ruddell also claims that Captain Mullen has no medical or ergonomic training to authoritatively state whether Ruddell used improper bending techniques, contrary to his training, while handling wire on the day of the incident. However, Captain Mullen's CV

is replete with references to his knowledge of vessel safety, crew member training, and OSHA compliance. Thus, the Court finds that Captain Mullen is qualified to opine on the topic of crew member safety and training, which may include proper bending and lifting techniques. For the same reasons, Captain Mullen is qualified to comment on a crew member's ability to request that work be stopped if conditions are too severe to work in, as well whether the vessel was fit for its intended use and purpose on the day of the incident and whether MPC provided the crew with a safe place to work. Ruddell can, of course, cross-examine Captain Mullen on any or all of these subjects.

Finally, Ruddell objects to Captain Mullen's conclusion that the weather conditions were not severe enough at the time of the incident to justify stopping or halting work, as well as his conclusion that the Captain of the M/V Nashville used appropriate data to make an informed decision about whether to perform the work. Ruddell claims that Captain Mullen should have identified what the weather conditions were and the data that was used. This argument also fails. "Unless the court orders otherwise, an expert may state an opinion—and give the reasons for it—without first testifying to the underlying facts or data." FED. R. EVID. 705. Ruddell is free question Captain Mullen regarding the data he used on cross-examination, where he may be required to disclose such information. *See id.*

## Conclusion

For these reasons, the Motion to Strike the Report and Bar the Testimony of Robert B. Ancell, filed by Defendant Marathon Petroleum Company LP (Doc. 35) is **GRANTED**. The Motion to Strike the Report and Bar the Testimony of Howard

Altschule, filed by Defendant Marathon Petroleum Company LP (Doc. 36), is **DENIED**.

Plaintiff Ryan Ruddell's Motion to Strike the Report and Bar the Testimony of Liability Expert Kevin Mullen (Doc. 43) is **DENIED**.

    **IT IS SO ORDERED.**

    DATED:    April 25, 2017

    */s/ Nancy J. Rosenstengel*
    **NANCY J. ROSENSTENGEL**
    **United States District Judge**